DANIEL C. DAVIS *vs.* THOMAS B. POPE, Administrator.

The owner of land agreed in writing with a builder to make advances at certain stages of the building, and, upon his building accordingly, and paying the amount of the price and advances, either in cash or notes secured by mortgage on the land, to convey the land to him. The owner afterwards agreed in writing with an agent who had assisted him in making this bargain, that when the contract with the builder should be performed he would pay him a certain part of the money or notes and mortgages received from the builder. The owner of the land died before the building was finished. *Held*, that if the builder afterwards performed his part of the contract, and offered to the owner's administrator to pay for the land by notes and mortgages to him or any one entitled to receive them, and the administrator refused to receive them, and prevented and dispensed with the payment of the price and advances, and the administrator and heirs refused to convey the land to the builder, or to pay the agent his share, the administrator was liable to the agent in an action at law for the amount which the intestate had agreed to pay him.

An agreement in writing to pay for land by " giving a note or notes secured by mortgage " thereon for the price cannot be shown by evidence of an oral agreement between the parties, or of usage, to require such notes to be made with interest payable semi-annually.

ACTION OF CONTRACT against the administrator of the estate of Lemuel Pope. Trial before *Bigelow*, J., who reserved for the

consideration of the full court the question whether, on the facts alleged in the declaration, any action at law could be maintained against the defendant as administrator, and other questions stated in the opinion.

This case was argued and decided at November term 1855.

*R. Choate & J. L. English,* for the plaintiff.

*C. G. Loring & E. D. Sohier,* for the defendant.

Thomas, J.  1.  The contract, for non-performance of which the administrator is sued, is in substance and effect as follows: The plaintiff had assisted the defendant's intestate in effecting the sale of certain lots of land in Roxbury to Shadrach Dickson.  The terms of the sales of or bargains for the several lots were expressed in written contracts between the deceased and Dickson.

One of them, that for lot No. 14, is given.  Its material provisions are as follows.: Pope, the deceased, contracts, upon the performance of the agreement of Dickson, to convey to him a lot of land in Roxbury, No 14 on a certain plan drawn by A. Wadsworth, containing fifteen thousand square feet.  Dickson agrees to pay for the land twelve and a half cents a square foot, with interest from date, and taxes.  Dickson also agrees, within one year from date, to build a dwelling-house upon the lot, according to plans to be approved by Pope.  And Pope agrees to advance in money or procure a loan on the estate of one half the valuation of the house thus erected, in three payments; one when the house is covered and shingled, one when plastered and painted, and the third when tenantable.  Dickson is to keep a reasonable insurance upon the buildings while being erected, payable in case of loss to Pope.  Upon Dickson's performing within the year the agreements to be performed by him, and paying the price of the lot, advances, interest and taxes, Pope is to convey by warranty deed, with release of dower.  Dickson agrees either to pay the price, advances, and interest and taxes; " or, upon his giving a note or notes payable in five years, secured by mortgage on said lot of land, for the price of said lot and said advances and interest, in amounts agreeable to Pope," the conveyance is to be made by Pope.

The contract which is the subject of the suit refers to and is based upon this contract and the other contracts like this, and recites that it was well understood that when said contracts of Pope with Dickson were severally performed, the mortgage notes should be divided, so as to pay Pope eight cents per square foot and his advances under the contracts, and a second mortgage note and deed should be made for four and a half cents the foot on each of the lots, to be indorsed over, without recourse, to Davis, in payment for his services in selling the land. If Dickson paid the money for the land, advances and interest, Pope was to pay to Davis four and a half cents a square foot. Each lot was to stand by itself, and the agreement to apply to such lots as Dickson should fulfil the contract upon, and to no more.

The declaration is in substance as follows: The plaintiff avers that Dickson proceeded to erect a house on each of said lots; that the deceased made advances from time to time; that before either of the houses was completed, Lemuel Pope died, and the defendant as his administrator continued to make advances as the work progressed; that the contracts of Dickson were performed, the houses built, &c., and everything done by him to entitle him to a conveyance, except the payment of the price, advances, &c.; that Dickson was ready to pay by promissory notes and mortgages as stipulated, and offered to deliver such notes and mortgages to the administrator, or to any other party entitled to receive them as the representative of Lemuel Pope; but the defendant refused to receive them; that after the houses were completed the defendant and the heirs at law of Lemuel Pope refused to convey in compliance with the contract; that the house on lot No. 16 having been built and completed, the full price of the land was received by the administrator within the year; that after the other houses were completed within the year, the defendant as administrator prevented and dispensed with the payment of the price, advances and interest, in money or mortgages, and accepted from Dickson a guaranty of Ralph Plympton for the prompt completion of the houses, which were completed accordingly; that neither Lemuel Pope

in his lifetime, nor his representatives since, have assigned or delivered over to the plaintiff the notes and mortgages as agreed, nor paid the plaintiff anything for his services in the sale of the land; and that the plaintiff has requested the defendant to pay him the amount of four and a half cents a foot, but the defendant has refused to pay in mortgages or money; and there is now due to the plaintiff the sum of nine thousand dollars.

The first question raised by the report is, whether from the nature of the contract declared on, and the facts set forth in the declaration, any action at law can be maintained against the defendant as administrator.

The contract or agreement on the part of the deceased was that when Dickson performed the several contracts on his part or any one of them, the deceased would either pay him four and a half cents per foot if the cash was paid, or assign to him mortgages of Dickson to that amount. The labor had been performed, the services which were the consideration of the contract substantially rendered, before the contract of the plaintiff with the defendant's intestate was reduced to writing.

Upon the performance by Dickson of the stipulations in the contract between Pope and himself, within the time fixed, the right of the plaintiff to his compensation became absolute. If Pope received the money, the four and a half cents per foot might be recovered in assumpsit. If he received the mortgages, he might be compelled in equity to assign. If Dickson had performed the stipulations on his part so far as performance was possible, and Pope had refused to do what was requisite on his part to the completion of the contract, Pope would have been liable in damages to the plaintiff, the measure of which would be the amount which the plaintiff was to receive for effecting the sales.

What effect has the death of Pope, before the contract between him and Dickson had been performed, upon the rights of the plaintiff?

Two things are to be done, the payment of the stipulated advances, and the conveyance of the lots. The first is an agreement to pay money at times to be made certain by other

events, to wit, the completion of certain parts of the work. This, if the estate is solvent, the administrator must do. The conveyance of the estate may be enforced against the administrator in equity, or the administrator, upon application to this court, may have a decree requiring him to convey; and a conveyance made or tendered under such decree would have the effect of holding the other contracting party to a performance on his part. Rev. Sts. *c.* 74, §§ 16, 17.

Is the remedy of the plaintiff confined to a court of equity? It would seem to be very clear that if Dickson had paid in cash the twelve and a half cents per foot and the advances, &c., the plaintiff would have been entitled to and must have recovered of the administrator four and a half cents per foot. The difficulty which would be suggested may be that the estate vests in the heirs at law, and that the administrator has no power to convey the estate under the contracts. The answer is, perhaps, that though upon the decease of Pope, the legal estate vests in his heirs at law, yet it vests subject to the rights which Dickson or those claiming under him have by the contract, which rights may be enforced in a court of equity, or damages for the breach of the contract recovered at law.

Whether the plaintiff in this case is in a situation to enforce this contract either at law or equity, depends upon another question, which is, whether Dickson has performed his contract; for such performance on the part of Dickson must be regarded as a condition precedent to any right of the plaintiff to recover. The plaintiff avers that Dickson has so performed. And, upon the question whether an action can be maintained at all, this averment is to be taken to be true.

Beside the question whether the action can be maintained at all is the question whether Dickson's contracts required him to give the notes and mortgages with interest payable semi-annually, and whether it was competent for the defendant to produce parol evidence to show that such was the agreement. And we think parol evidence of such agreement to pay interest semi-annually, or of the existence of a usage to that effect, is not competent, upon the plain and obvious ground that it tends to

control and vary the written contract; that the contract itself is unambiguous, and that interest was not payable by its terms till the lapse of the five years. Though these features of the contract are unusual, and might render it improbable that the parties would enter into such an arrangement, a court of law must find their meaning and intent in what is written.

Of the power of the administrator to make the waiver or accept the guaranty, the court can entertain no serious doubt.

In respect to lot No. 16, as a conveyance was actually made of it and the buildings upon it, and the proceeds of the sale applied to the payment of the advances on other lots, and the contracts were several and independent, the administrator may well be held to have received the price of this lot, advances, interest and taxes, and so liable to pay to the plaintiff the four and a half cents per foot of the price.

*Case to stand for trial.*